***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has shown good grounds to amend the prior Opinion and Award. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
3. Kemper/American Manufacturer Insurance Company provided defendant-employer with workers' compensation coverage at all relevant times herein.
4. Plaintiff's average weekly wages will be determined from a Form 22 submitted by defendants.
5. The issues to be determined by the Full Commission are as follows:
 a. Whether plaintiff developed an occupational disease as a result of his employment with defendant-employer?
 b. If so, what, if any, benefits is plaintiff entitled to receive under the North Carolina Workers' Compensation Act?
 c. What amount of credits are defendants entitled to receive on account of unemployment benefits paid to plaintiff?
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the deputy commissioner hearing in this matter, plaintiff was forty-one (41) years old.
2. Plaintiff was employed by defendant-employer as a maintenance mechanic from July 1996 through September 25, 1997. Plaintiff's job duties consisted of maintenance repairs, including welding repairs. Plaintiff had to do welding repairs inside large industrial tanks as a part of his duties. The tanks were washed out prior to plaintiff entering them, and they were ventilated with fans. The tanks contained such chemicals as sulfuric acid, alcohol, butane alcohol and other chemicals. Some of the tanks also had asbestos.
3. Prior to starting to work for defendant-employer, plaintiff was given a physical, which he passed. Plaintiff did not have breathing problems prior to working for defendant-employer. After working inside the tanks plaintiff began to experience breathing problems such as shortness of breath and coughing.
4. Plaintiff testified that on one occasion in February 1997, he worked inside a tank that did not have proper air circulation, causing plaintiff to become sick and nauseated.
5. On February 26, 1997, plaintiff first presented to Dr. James Crossley, an ear, nose and throat specialist. Dr. Crossley diagnosed plaintiff as having sinusitis with septal deviation with traumatic chemical rhinitis. Dr. Crossley had a CT performed of plaintiff's sinuses, and the impression was "moderate polypoid thickening in the anterior base of the left antrum, otherwise clear sinuses. Spur on the right nasal septum." Dr. Crossley had scheduled plaintiff for septal surgery on March 21, 1997, for a repair of plaintiff's deviated septum, but this surgery was canceled due to the fact that defendant-employer asked plaintiff to work the weekend immediately following the scheduled surgery in order to help the employer prepare for an annual state inspection of their facilities.
6. On March 19, 1997, Dr. Crossley referred plaintiff to Dr. Clinton Young, a board certified physician in internal medicine, with subspecialty board certification in pulmonary medicine. Plaintiff saw Dr. Young on March 21, 1997 and May 12, 1997, for evaluation of dyspnea. Dr. Young's findings from his examination were that plaintiff's pulmonary function tests were within normal limits and Dr. Young did not find any nasal membrane inflammation or abnormalities in the lining of plaintiff's nose. During his deposition, Dr. Young stated that there were probably several factors involved in causing plaintiff's dyspnea. At this time, Dr. Young felt plaintiff might have developed a respiratory irritant syndrome of some sort from his self-described welding exposure; however, Dr. Young further stated that he had no way to objectively confirm that was the cause of plaintiff's condition. Dr. Young also surmised that an allergic component and anxiety might be the cause of some of plaintiff's dyspnea complaints.
7. During his November 21, 1997 visit, plaintiff informed Dr. Young that he had been terminated from his job with defendant-employer on September 25, 1997, but had since obtained a new job welding outdoors. In addition, Dr. Young noted that plaintiff's sniffing had stopped, he felt well, his chest felt fine, his nose looked normal, and it appeared that his problems had resolved. At this time, Dr. Young felt that plaintiff's complaints might reflect a combination of allergic and irritant factors causing irritation of the nose, or rhinitis. Dr. Young also felt at this time that there was no reason why plaintiff should not continue to be employed as a welder.
8. On August 24, 1998, plaintiff was again examined by Dr. Young who found his lung fields were clear. Again, Dr. Young still did not have an opinion at this visit to a degree of medical certainty that plaintiff's complaints were related to his welding work and did not take him out of work.
9. On January 11, 2001, plaintiff again visited Dr. Young. On examination, Dr. Young found plaintiff's nasal airways, throat, and lung fields were clear. Dr. Young testified that other than plaintiff's occasional mild, dry cough, there was no objective clinical evidence to support a finding that plaintiff had bronchitis or obstructive pulmonary disorder on this date. Dr. Young performed some pulmonary function tests on plaintiff during this visit; however, Dr. Young found plaintiff's effort on these pulmonary function tests to be so "conspicuously invalid" in that he was trying to produce lower scores, that he could not use the results and plaintiff's true physical ability was probably better than the report indicated.
10. Dr. Young examined plaintiff again on May 4, 2001 and found his breathing and chest clear. While Dr. Young felt plaintiff may have had mild chronic bronchitis or tracheitis, he did not feel any of his bronchitis-like complaints of cough to be related to his employment with defendant-employer in 1997.
11. Dr. Young, at his deposition, testified that plaintiff's employment as a welder merely could have aggravated his rhinitis or bronchitis condition. Dr. Young did not state to a medical certainty that plaintiff had any occupational condition or that plaintiff should be removed from his work environment as a welder.
12. Dr. Young testified that while examining plaintiff he had trouble eliciting a history because whenever he started asking plaintiff questions, plaintiff would decline to answer them and would turn his head, wave his hand, snort and sniff loudly, and indicate he could not answer right away as if he needed to catch his breath. Dr. Young stated that this snorting or sniffing seemed to come on when he asked pointed questions or situations where he thought the patient was more anxious. In addition, Dr. Young felt plaintiff purposefully gave less than maximum effort on his pulmonary tests in order to try to lower his test scores. Plaintiff's lack of forthrightness in his communications and examinations with Dr. Young combined with his lack of candor with the Employment Security Commission regarding wages earned while receiving unemployment benefits as documented on page 20 of the exhibits attached to the Transcript of the Evidence lends support to the Commission's conclusion that plaintiff and his testimony are not credible.
13. On August 2, 2001, an independent medical evaluation was performed of plaintiff by Dr. George Kilpatrick, a board certified internal medicine physician with a specialty in pulmonary medicine. Dr. Kilpatrick diagnosed plaintiff with a work-related chemical inhalation injury based on plaintiff's history during the 1996 through 1997 period resulting in plaintiff's present condition of chronic bronchitis with mild airflow obstruction problems. Dr. Kilpatrick also testified that a mild or minimal airway obstruction such as plaintiff's can be present in the general population at large. However, Dr. Kilpatrick further stated that his only basis for this diagnosis was plaintiff's history as he had no medical records of previous pulmonary studies performed on plaintiff to demonstrate plaintiff's pulmonary function prior to his alleged on the job chemical exposure in 1997; therefore, the Commission gives greater weight to the opinion of Dr. Young regarding the cause of plaintiff's pulmonary conditions.
14. There is insufficient competent evidence of record to establish that plaintiff contracted an occupational disease characteristic of or peculiar to his employment as a maintenance mechanic with defendant-employer due to the fact that plaintiff's history is not credible and plaintiff suffers from a condition common to the general population, namely allergic rhinitis and bronchitis.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSION OF LAW
1. The medical evidence fails to establish that plaintiff's employment with defendant-employer caused or was a significant causal factor in the development or aggravation of plaintiff's allergic rhinitis and bronchitis. Plaintiff also failed to prove that his employment placed him at an increased risk of developing or aggravating allergic rhinitis and bronchitis condition as compared to members of the general public not so employed. Therefore plaintiff's claim must be denied. N.C.G.S. §97-53(13).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and issues the following:
 ORDER
1. Plaintiff's claim must be and is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of November 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER